liBROWN, Judge,
concurring.
To state that this action merely concerns the management of a trust is disingenuous. Distinct claims of fraud, theft, and illegal inside trading are asserted. The allegations contained in the pleadings and documents of record need to be set forth.
Randall F. Marston, Sr. was domiciled in Shreveport. Marston died January 30, 1990. Marston’s only marriage ended in divorce and he was survived by one son.
In 1982, Marston executed a last will and testament, which was drafted by T. Haller Jackson, Jr., of the Shreveport law firm of Tucker, Jeter, Jackson & Hickman. The bulk of the estate was entrusted to First National Bank of Shreveport, now Premier Bank, to hold in three separate trusts for the benefit of Marston’s son and two adult grandchildren. The bank was also designated as executor. The trustee was given complete power to decide what income to pay or whether to invade the principal. The trustee possessed sole discretion to wholly or partially terminate a beneficiary’s trust.
When Marston died in 1990, his estate was solvent. A sworn descriptive list of assets and liabilities filed in April 1991 by Premier Bank showed assets of approximately 4.7 million dollars (immovable property and mineral interests — $1.4 million; stocks and bonds— $2.4 million; cash — $348,314; insurance— $8,567; and miscellaneous properties — $491,-792).
On the other hand, Marston’s debts totaled only $76,221. Administrative expenses, however, were listed as $387,118. These expenses included: $118,054 — Premier Bank’s executor’s commission; $84,000 — 12legal fees, Tucker, Jeter, Jackson & Hickman; $24,-000 — legal fees, a law firm in Mexico; and, $30,062 — appraisal fees.
*729 Marston owned 28,099 shares of Premier Bank’s common stock Premier Bancorp, Inc.), which were valued at the time of death (January 1990) at $4.50 per share. Within four months of Marston’s death, Premier sold this stock for less than $3.50 a share. It is alleged that at the time of the sale, Premier Bank was secretly involved in negotiations to merge with Banc One and knew that such a merger would substantially increase the value of the stock.
Premier’s chief executive officer and chairman of its holding company, George Lee Griffin, was made a defendant in a third amended and supplemental complaint.[1] In the spring of 1990, Griffin is alleged to have conducted secret negotiations with Banc One. The bank’s attorney, Frank M. Coats, Jr., was alleged to be providing legal advice to Griffin at this time. It is alleged that when Premier announced in February 1991, that it had acquired new capital from Banc One and given Banc One an option to buy Premier at 125% of its book value, the bank’s stock increased to more than $20 per share.
Documents attached to the third amended and supplemental petition contain an affidavit from an officer of Legg Mason (stock brokerage firm) and a copy of correspondence from Coats, who represents Premier in this action. On May 30, 1990, LaBanc & Co., described as Premier’s investment advisors, sold 14,000 shares of Marston’s Premier stock at 3-7/16th. On hMay 31, 1990, an alleged director of Premier Bank, F. Charles McMains, Jr., purchased through Legg Mason 10,000 shares of Premier stock for $3.50 a share. It is further alleged in the third amended complaint that McMains serves in the state legislature and “since making handsome profits in Premier Bank stocks ... Representative McMains has ‘chosen’ to sponsor considerable banking legislation favorable to Premier.”
On June 12, 1990, the remaining 14,099 shares of Marston’s stock were sold at 3-l/8th. On June 13,1990, Premier’s attorney, Frank Coats, purchased 2,000 shares through his brother, who is a broker for Legg Mason, at $3.25 each for his sons’ trusts. Coats states in his letter to plaintiffs’ attorney that he resold these shares at $17.75 per share. Coats explained in his correspondence that he “was willing to bet a small amount of my children’s money that Premier Bank would make it.” Plaintiffs allege that Coats’ letter was written only after Premier’s opposition to disclosure by Legg Mason was denied. The remaining shares of Marston’s Premier stock were allegedly purchased by Premier for the benefit of its employees.
It is alleged that Premier employed extortion arid abuse of legal process against trust beneficiaries who complained about Premier’s fiduciary practices. It is also alleged that a portion of a 1,666 acre farm owned by Marston in Red River Parish was sold to a Premier preferred customer for considerably less than its appraised value. The remaining allegations, including those concerning Marston’s mineral interests in Webster Parish, describe mismanagement claims under the Trust Code.
|4The issue is venue. Premier argues that the rights and obligations set forth in the Trust Code are exclusive and do not give rise to any tort liability under La.C.C. 2315. Thus, Premier argues that the venue provided in tort is immaterial. Citing no jurisprudence on point, the majority adopts Premier’s argument. The majority, however, recognizes that where recovery is sought under different theories, but arising out of the same factual circumstances, venue is proper anywhere allowed under any of the theories alleged. LSA-C.C.P. Art. 45. The Trust Code does not state an exception to this rule nor does it strip trust beneficiaries of their rights under the law of torts.
Clearly, other legal theories are alleged in pleadings in this case; however, these theories are not related to the mineral interest in Webster Parish. Thus, I concur that Webster Parish is not a proper venue.
In oral argument, Premier’s attorney stated that the value of Marston’s estate has already been reduced by one-half through taxes, administrative fees and legal expenses. Why a trust was needed in the first place is *730 not clear from the limited record. It should be obvious, however, that this litigation, even if the trustee is successful, will deplete the estate. Premier’s refusal not to exercise its discretion to terminate the trusts could arguably be tantamount to a breach of fiduciary duty.

. This third amended and supplemental petition was allowed to be filed and made part of the record by the trial court during the pendency of this appeal.